UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>Plaintiff(s),<br><br>v.<br><br>VALLEY VIEW MEADOWS HOMEOWNERS ASSOCIATION, INC., et al,<br><br>Defendant(s). | Case No. 2:16-CV-275 JCM (CWH)<br><br>ORDER |

Presently before the court is plaintiff Bank of America N.A.'s ("BANA") motion for summary judgment as to "all claims in its complaint and on Premier One Holdings, Inc. and Lin & Yeh, Inc.'s counterclaims."[1] (ECF No. 30 at 2). Defendants Premier One Holdings, Inc. ("Premier") and Lin & Yeh, Inc. ("LYI") filed a response (ECF No. 31), and Valley View Meadows Homeowners Association (the "HOA") joined that submission (ECF No. 32). BANA filed a reply. (ECF No. 34).

**I.  Introduction**

The case involves the HOA foreclosure sale of the real property at 913 High Mountain Street, Henderson, Nevada (the "property"). (ECF Nos. 1, 30).

On September 14, 2010, BAC Home Loans Servicing, LP ("BAC") acquired the deed of trust created in connection with a purchase loan for the property. (ECF Nos. 30, 30-3).

The HOA "recorded a notice of delinquent assessment lien in January 2010," stating that a sum of $736.34 was owed to the HOA. (ECF No. 30 at 3).

---

[1] BANA is successor by merger to BAC Home Loans Servicing. (ECF No. 30-4).

James C. Mahan
U.S. District Judge

On March 30, 2010, the HOA's agent, Nevada Association Service, Inc. ("NAS"), recorded a notice of default and election to sell, indicating a liability of $1,824.34. (ECF No. 30-6).

On July 29, 2010, BAC's counsel wrote a letter to NAS, offering tender of $180.00 for what that letter acknowledged was then a purported $4,673.02 sum due. (ECF No. 30-9). On July 1, 2011, BAC merged into BANA. (ECF No. 30-4).

On August 22, 2011, NAS recorded a notice of foreclosure sale for the property, which indicated an outstanding liability of $3,481.46.[2] (ECF No. 30-7). NAS did not accept that offered payment. (ECF No. 30).

Finally, a foreclosure deed was recorded by NAS in favor of Premier on March 11, 2013. (ECF No. 30-10).

BANA alleges the following claims: (1) quiet title/declaratory judgment as to all defendants; (2) breach of Nevada Revised Statute ("NRS") § 116.1113 against the HOA and NAS; (3) wrongful foreclosure against the same; and (4) injunctive relief against Premier. (ECF No. 1).

On March 11, 2016, Premier and LYI filed an answer and counterclaim against BANA, alleging claims of quiet title and declaratory relief. (ECF No. 13).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

---

[2] Another notice of foreclosure sale was recorded on February 12, 2013. (ECF No. 30-8).

**James C. Mahan**
**U.S. District Judge**

- 2 -

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

*a. Plaintiff's NRS 116.1113 and wrongful foreclosure claims*

Subsection (1) of NRS 38.330 provides that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1). However, while NRS 38.330(1) explains the procedure for mediation, NRS 38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation." NRS 38.310. Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added). Moreover, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time.

Next, under NRS 38.300(3), a civil action includes "an action for money damages or equitable relief," but not "an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." Violation of NRS 116.1113 is a "civil action[] as defined in NRS 38.300." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013) (finding that a claim for violation of NRS 116.1113 was properly dismissed for lack of compliance with NRS 38.310).

Further, "[a] wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure

- 4 -

claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12–CV–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558. Therefore, plaintiff's claim of wrongful foreclosure must be mediated before this court may delve into its merits.

In sum, plaintiff's claims for violation of NRS 116.1113 and unjust enrichment will be dismissed as unexhausted for failure to mediate.

    *b. Plaintiff's claim for injunctive relief*

Despite plaintiff's formulation of this request as a claim, injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted). Therefore, this claim will also be dismissed.

    *c. Declaratory relief/quiet title*

In Nevada, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but 'each party must plead and prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992)).

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

James C. Mahan
U.S. District Judge

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

*1. Insufficient tender*

BANA did not tender the amount sent forth in the notice of default and election to sell, which stated an amount due of $1,824.34. (ECF No. 30-6). Rather, BANA tendered a lesser amount, specifically, $180.00. (ECF No. 30-9).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see*

*also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."). BANA offered $180.00 based on its calculation of the nine months of unpaid HOA dues, without adequately accounting for the maintenance and nuisance-abatement charges. *See* (ECF No. 30 at 11, 30-9 at 13). BANA does not provide an adequate explanation for its selectivity of inputs when calculating its proposed tender value.

BANA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount based on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale). Therefore, this argument fails.

There is also no "as applied" violation of due process as a result of the rejected tender. The March 30, 2010, notice of default set forth an amount due of $1,824.34. (ECF No. 30-6). Rather than tendering the full amount due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to pay a lesser amount ($180.00) based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default ($1,824.34), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BANA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BANA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing

great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

In sum, BANA's arguments regarding tender are insufficient and unpersuasive.

*2. Due process and NRS Chapter 116*

BANA next argues that the HOA lien statute is facially unconstitutional because it "did not mandate notice to mortgagees prior to its recent amendment." (ECF No. 30 at 6). BANA further posits that any factual disputes regarding actual notice are irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); *see also* (ECF No. 30).

However, the Ninth Circuit actually held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights; plaintiff's interpretation of that holding is overbroad. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue in that case was the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BANA has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, BANA fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. In fact, BANA acknowledges having received the notice of default. (ECF No. 30-9 at 6) ("This letter is written in response to your Notice of Default with regard to the HOA assessments purportedly owed on the above described real property . . . ."). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency of action and offered all of the required information. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, BANA does not dispute receiving actual notice of the foreclosure sale, but merely that "actual notice does not change the analysis." (ECF No. 30 at 8). As discussed above, this assertion is incorrect. *See Mullane*, 339 U.S. at 314.

       3.    *Commercial unreasonability*

BANA contends that judgment in its favor is appropriate because the sale of the property for under 7% of its alleged fair market value is grossly inadequate as a matter of law. (ECF No. 30 at 14). BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in setting aside a sale where the price is less than 20 percent of fair market value." (ECF No. 30 at 12) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have

interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's suggestion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *and Foster v. Costco*

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

*Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *and Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test—which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale—controls. *See* 639 P.2d at 530.

Here, BANA does not argue how the sale was a product of unfairness, fraud, or oppression except for its theory that the purportedly unjustified rejection of tender was sufficient to satisfy *Long*. (ECF No. 30). As discussed above, BANA has failed to show that it made a sufficient attempt at tender in this case. Therefore, BANA's commercial unreasonability argument is unpersuasive.

### 4. *Supremacy clause*

Under the property clause of the United States Constitution, only "Congress shall have the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . . ." U.S. Const. Art. IV, § 3, cl. 2. The supremacy clause provides that the "Constitution . . . shall be the supreme law of the land . . . ." U.S. Const. Art. VI, cl. 2. "State legislation must yield under the Supremacy Clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).

In *Rust*, the Ninth Circuit held that a city's foreclosure on property insured by the Federal National Mortgage Association was invalid under the supremacy clause. The court reasoned that upholding the sale "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id.*

On this basis, courts consistently apply federal law, ignoring conflicting state law, when determining rights related to federally owned and insured loans. *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 362 (9th Cir. 1970) (holding that federal law applies to mortgages

insured by the Federal Housing Administration ("FHA") "to assure the protection of the federal program against loss, state law to the contrary notwithstanding"); *see also United States v. Victory Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981) (citing Ninth Circuit case law) ("We note that federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing with the remedies available upon default of a federally held or insured loan."). Foreclosure on federal property is prohibited where it interferes with the statutory mission of a federal agency. *See United States v. Lewis Cnty.*, 175 F.3d 671, 678 (9th Cir. 1999) (holding that the state could not foreclose on federal Farm Service Agency property for non-payment of taxes).

Indeed, federal district courts in this circuit have set aside HOA foreclosure sales on supremacy clause grounds in cases involving federally insured loans. *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13-cv-1199-JCM-VCF, 2015 WL 1990076, at *1 (D. Nev. Apr. 30, 2015); *see also Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 982 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure on HUD property, quieting title in HUD's favor based on property and supremacy clauses); *Yunis v. United States*, 118 F. Supp. 2d 1024, 1027, 1036 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure sale of property purchased under veteran's association home loan guarantee program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *6 (D. Nev. Sept. 25, 2014) (holding that property and supremacy clauses barred foreclosure sale where mortgage interest was federally insured).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sky Meadow Ass'n*, 117 F. Supp. 2d at 980–81 (discussing program); *Wash. & Sandhill Homeowners Ass'n*, 2014 WL 4798565, at *1 n.2 (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

However, the instant claims to quiet title are not directed at FHA. *See* (ECF Nos. 1, 13). Therefore, this court finds that plaintiff does not have standing to assert this claim under the

supremacy clause. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1162–64 (D. Nev. 2016); *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1177 (D. Nev. 2015); *see also Bank of America, N.A. v. Hollow de Oro Homeowners Association, et al.*, No. 2:16-CV-675-JCM-VCF, 2017 WL 936633, at *3 (D. Nev. Mar. 9, 2017).

### 5. *Retroactivity of* SFR Investments

Finally, BANA argues that *SFR Investments* should not be applied retroactively. (ECF No. 30). The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

## IV. Conclusion

In sum, BANA has failed to show that it is entitled to quiet title in its favor. Additionally, BANA's claims of breach of NRS § 116.1113, wrongful foreclosure, and injunctive relief will be dismissed.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 30) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's claims of breach of NRS § 116.1113 and wrongful foreclosure be, and the same hereby are, DISMISSED as unexhausted, without prejudice.

. . .

. . .

IT IS FURTHER ORDERED that BANA's claim for injunctive relief be, and the same hereby is, DISMISSED.

DATED July 5, 2017.

_____
UNITED STATES DISTRICT JUDGE